CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 29 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEREK K. MCQUAIG, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:17CV00323 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| NANCY BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Derek K. McQuaig, was born on October 16, 1966, and eventually completed his high school education. Mr. McQuaig has also completed two years in college and previously worked as a communications engineer. He last worked on a regular and sustained basis in 2008. (Tr. 36). On January 23, 2014, Mr. McQuaig filed an application for a period of disability and disability insurance benefits. The record suggests that an earlier application for such benefits had proven unsuccessful. In filing his most recent claim, Mr. McQuaig alleged that he became disabled for all forms of substantial gainful employment on June 20, 2012, due to hip pain, digestive disorder, hypertension, posttraumatic stress disorder, cervical spine impairment, fibromyalgia, left knee injury, headaches, and chronic obstructive pulmonary disease. He now maintains that he has remained disabled to the present time. The record reveals that Mr.

McQuaig met the insured status requirements of the Act through the fourth quarter of 2013, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before December 31, 2013. See 42 U.S.C. § 423(a).

Mr. McQuaig's most recent application was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated March 24, 2017, the Law Judge also determined that plaintiff was not disabled. The Law Judge found that Mr. McQuaig suffered from several severe impairments, including bilateral hip avascular and aseptic necrosis with a total right hip replacement; degenerative disc disease; anxiety; knee arthritis; posttraumatic stress disorder; major depressive disorder; and a history of Crohn's disease, colitis, and attention deficit hyperactivity disorder. (Tr. 13). Because of plaintiff's mental and physical impairments, the Law Judge held that plaintiff was disabled for all of his past work roles. (Tr. 23). However, the Law Judge ruled that plaintiff retained sufficient functional capacity for a limited range of sedentary work at all relevant times prior to termination of insured status. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured of December 31, 2013, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with exceptions. The claimant could never climb or crawl, but could occasionally stoop and crouch. He was able to maintain attention and concentration throughout the workday for tasks involving short, simple, and some detailed, but not more complex instructions. The claimant could tolerate occasional interaction with others, but could not interact with large crowds of unfamiliar persons. He required the use of a cane for ambulation beyond fifty feet.

(Tr. 17). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge ruled that Mr. McQuaig retained sufficient functional capacity to perform several specific sedentary work roles existing in significant number in the national economy. (Tr. 24). Accordingly, the Law Judge ultimately concluded that plaintiff was not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. McQuaig has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. With regard to non-exertional limitations, the court must conclude that the Law Judge did not account for all of the manifestations of plaintiff's conditions in the hypothetical questions put to the vocational expert. Thus, the court finds "good cause" for remand of this case to the Commissioner so that all of

plaintiff's work-related limitations can be considered in assessing his capacity for other work roles.

The medical record confirms that Mr. McQuaig has a history of depression and pain related to physical impairments. On March 28, 2012, Mr. McQuaig established treatment at the Veterans Affairs Medical Center ("VAMC") in Salem, Virginia. (Tr. 608). During that visit, he saw VAMC Physician Assistant Christopher L. Lentz for a general evaluation and Dr. Christina B. Shook for a psychological evaluation. (Tr. 598, 608). Dr. Shook observed that Mr. McQuaig had poor concentration, including during activities such as watching television and reading the newspaper, and that this problem occurred "quite a bit" or more than half of the time. (Tr. 600, 603, 606).

On November 18, 2014, Lentz and Dr. John F. Gaylord completed a medical source statement for Mr. McQuaig.[1] (Tr. 489). The two providers opined that, as of January 2008, Mr. McQuaig experienced the following limitations: Mr. McQuaig could only lift and carry ten pounds occasionally; required five-minute walking breaks every thirty to sixty minutes; and was limited to less than one hour of sitting and less than one hour of standing or walking in an eight-hour work day. (Tr. 487-88). Finally, they concluded that Mr. McQuaig would be absent from work at least three times a month because of his impairments and that his depression and memory problems affected his ability to work. (Tr. 488-89).

---

[1] While the Commissioner places significance on the fact that the medical source statements were dated after the termination of the plaintiff's insured status in this case, the court notes that it is clear that the medical source statements were based on a course of treatment that began before the termination of insured status. Moreover, the Commissioner appears to have incorporated, at least in part, some of the opinions in the medical source statements. Accordingly, the medical source statements arguably relate back to the relevant period. Inasmuch as the court has decided to remand this case to the Commissioner for reconsideration, the Commissioner will wish to give further consideration to the possible relation back of medical evidence to a time prior to the termination of insured status. In any event, the determination that the medical evidence does not relate back based on the date that the medical evidence was generated is not consistent with the governing case law. See Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 341 (4th Cir. 2012).

On March 25, 2016, Dr. Gaylord completed a separate medical source statement setting forth Mr. McQuaig's physical limitations since 2007. (Tr. 617-21). In this statement, Dr. Gaylord concluded that Mr. McQuaig's pain and other symptoms would frequently interfere with Mr. McQuaig's ability to pay attention and concentrate during an eight-hour workday. (Tr. 620).

On October 18, 2016, Dr. Gaylord and Lentz completed a medical source statement regarding Mr. McQuaig's mental health. (Tr. 1478-81). The statement listed anxiety and depression as Mr. McQuaig's mental health diagnoses. (Tr. 1478). Dr. Gaylord indicated that Mr. McQuaig had experienced the following symptoms since 2008: irritability, social withdrawal or isolation, and intermittent insomnia. (Tr. 1479). According to Dr. Gaylord, Mr. McQuaig experienced no to mild limitations with understanding, remembering, and carrying out simple, one to two step instructions, but experienced moderate difficulty understanding, remembering, and carrying out detailed instructions. (Tr. 1480). While Mr. McQuaig could sustain an ordinary routine without supervision, he had moderate to marked limitations in maintaining attention and concentration for extended periods, completing a normal workday, and performing work at a consistent pace without rest periods. (Tr. 1480). Finally, Dr. Gaylord opined that Mr. McQuaig would be absent from work more than three times per month and stated that Mr. McQuaig's symptoms had been present since January 2008. (Tr. 1481).

In determining Mr. McQuaig's residual functional capacity, the Law Judge did not give controlling weight to any of Dr. Gaylord's opinions. Despite seemingly identifying Dr. Gaylord as a treating physician, the Law Judge concluded that the medical evidence did not support the limitations identified by Dr. Gaylord. (Tr. 22). As support for that conclusion, the Law Judge cited his analysis regarding the paragraph B criteria. (Tr. 22).

5

When the Law Judge discussed the paragraph B criteria, he commented on Mr. McQuaig's limitations regarding concentration, persistence, or pace as follows:

> With regard to concentrating, persisting, or maintaining pace, the claimant had <u>mild to moderate</u> limitations. Evidence in this area of functioning concerns actions that demonstrate the ability to focus attention on work activities and stay on task at a sustained rate. Examples include initiating and performing a work task, working at an appropriate and consistent pace, completing tasks in a timely manner, ignoring distractions, changing activities without being disruptive, and working close to or with others without interrupting or distracting them. This area also considers an individual's ability to sustain an ordinary routine and regular attendance at work, as well as the ability to work a full day without needing more than the allotted number or length of rest periods customarily provided.
>
> Here, the claimant did not exhibit any deficits in concentration on examination. However, he reported some distraction secondary to pain and ruminating thoughts. As detailed herein, providers stated the claimant began experiencing deficits in memory, though they still opined he could understand, remember, and carry out simple, one to two step instructions. Based on the above, the undersigned finds the claimant has a mild to moderate limitation in concentration that limited him to simple and some detailed tasks.

(Tr. 16) (emphasis in original) (internal citations omitted).

The difficulty in this case is two-fold. First, the Law Judge's determination as to Mr. McQuaig's ability to concentrate is not clear. The court cannot discern from the Law Judge's decision in which ways Mr. McQuaig's limitations in concentration, persistence, or pace were mild and in which way those limitations were moderate. Moreover, the Law Judge appears to correlate an ability to perform simple and some detailed tasks with the ability to sustain concentration, but "the ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).

Second, in formulating a hypothetical question for the vocational expert, it is not clear whether the Law Judge attempted to account for his conclusion that Mr. McQuaig experiences mild to moderate difficulties in concentration, persistence, or pace. The Law Judge asked the

6

vocational expert to consider someone with Mr. McQuaig's age, education, and prior work experience and the following limitations:

> [I]f such individual was able to engage in sedentary work, sedentary is as the DOT designates sedentary for the exertional activities in the work environment of lifting, carrying, sitting, standing and walking. And if the individual would need to avoid, you know, climbing activity no more than occasional stooping or crouching, no concentrated levels of exposure to respiratory irritants, able ability to engage or perform tasks involving or requiring concentration, attention throughout a regular workday with ordinary breaks, requiring short, simple instructions, some detailed instructions, no more than occasional contact with others in the work environment, public, supervisors, coworkers, no interaction with large crowds of unfamiliar persons . . . .

(Tr. 52). While the Law Judge adopted the vocational expert's opinion that plaintiff can perform work as an assembler, stuffer, or gauger, the vocational expert was not asked to consider the significance of at least some moderate limitations in concentration, persistence, or pace in the performance of such jobs, all of which would seemingly require sustained attention and concentration. Indeed, the Law Judge's question to the vocational expert assumed that Mr. McQuaig had the ability to engage in or perform tasks requiring concentration and attention throughout an eight-hour workday with normal breaks, an assumption that would appear contrary to the Law Judge's conclusion that the plaintiff experiences mild to moderate difficulties in concentration, persistence, or pace. Nevertheless, the Law Judge relied on the testimony of the vocational expert in determining that Mr. McQuaig retains sufficient functional capacity for several specific work roles existing in significant number in the national economy.

In Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record,

7

and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.

Id. at 50 (citations omitted).

In his opinion, the Administrative Law Judge did not offer any rationale for omitting mild to moderate limitations in concentration, persistence, and pace in his assessment of plaintiff's residual functional capacity, or in his hypothetical questions propounded to the vocational expert. The court notes that in similar cases, the Commissioner often argues that moderate limitations are subsumed under a finding that a claimant is capable of performing only simple and routine tasks. However, the court is simply unable to conclude that the hypothetical questions, which assumed that plaintiff can perform unskilled work requiring the execution of simple, and even some detailed, job instructions, was sufficient to alert the vocational expert to the existence of at least some moderate limitations in plaintiff's concentration, work persistence, and attendance to task. Indeed, the court believes that consideration of such limitations would be especially important in assessing capacity for production line work such as that required to be an assembler.

As noted by the United States Court of Appeals for the Tenth Circuit in Wiederholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. 2005):

> The relatively broad, unspecified nature of the description "simple" and "unskilled" does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments. Because the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed. Moreover, there is no evidence to suggest that the VE heard testimony or other evidence allowing her to make an individualized assessment that incorporated the ALJ's specific additional findings about Mrs. Wiederholt's mental impairments.

Id. (citations omitted); see also Millhouse v. Astrue, No. 8:08-cv-378-T-TGW, 2009 WL 763740, at *3 (M.D. Fla. March 23, 2009) (stating that "moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a

8

limitation to unskilled work"); Chavanu v. Astrue, No. 3:11-cv-388-J-TEM, 2012 WL 4336205, at *9 (M.D. Fla. September 21, 2012) (noting that "[s]everal circuits have found that restricting [a] VE's inquiry to simple, routine, or repetitive tasks, or unskilled work does not accounts [sic] for a plaintiff's moderate deficiencies in concentration, persistence, or pace," and citing to these cases); and Sexton v. Colvin, 21 F. Supp. 3d 639, 642-43 (W.D. Va. May 19, 2014) (a limitation to simple, unskilled work does not necessarily imply, or take into account, moderate limitations in concentration, persistence, or pace).

As explained above, in Mascio v. Colvin, the United States Court of Appeals for the Fourth Circuit reached a similar conclusion:

> In addition, we agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

Id. at 638. The court believes that the rationale of Mascio applies directly to Mr. McQuaig's appeal. Thus, the court finds "good cause" for remand of the case to the Commissioner for further consideration of this critical issue.

On appeal to this court, the plaintiff also asserts that the Law Judge failed to give proper consideration to the opinions of Dr. Gaylord.[2] While the medical evidence does not indicate whether Mr. McQuaig received treatment from Dr. Gaylord other than to obtain the medical source statements, the Law Judge appeared to consider Dr. Gaylord to be one of plaintiff's treating physicians. (See Tr. 21-22). However, aside from not giving controlling weight to Dr.

---

[2] Once again, in the court's view, the problem in this case does not concern the weight accorded by the Law Judge to Dr. Gaylord's medical source statements, but rather the Law Judge's failure to properly convey the findings the Law Judge actually made based on Dr. Gaylord's reports to the vocational expert.

9

Gaylord's opinions, the Law Judge does not articulate what specific weight he accorded those opinions.

Under the regulations setting forth the standards for evaluating medical opinion evidence, the opinion of a treating physician is entitled to "'controlling weight' . . . so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]'" Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations in original) (quoting 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)); see also Brown v. Comm'r Soc. Sec., 873 F.3d 251, 268-69 (4th Cir. 2017). When the Law Judge does not give controlling weight to a treating physician's opinion, the Law Judge must consider a nonexclusive list of factors to determine what weight to give the opinion of the treating physician and all other medical opinions in the record. Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); see also 20 C.F.R. §§ 404.1527(c) and 416.927(c) (listing the factors to be considered). The Law Judge must also provide "good reasons in [his] notice of determination or decision for the weight [he] give[s] [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2); see also SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996) ("If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the [Law Judge] must explain why the opinion was not adopted."). Unless the Law Judge "explicitly indicates the weight given to all of the relevant evidence," a reviewing court cannot determine whether the Law Judge's findings are supported by substantial evidence. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) ("We have held that '[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific

application of the pertinent legal requirements to the record evidence.'") (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

The court believes that there is substantial evidence to support the Law Judge's decision not to give Dr. Gaylord's opinions controlling weight. There is no indication that Dr. Gaylord ever saw Mr. McQuaig during a time in which Mr. McQuaig still enjoyed insured status, and it is not clear whether Dr. Gaylord treated Mr. McQuaig except to complete the medical source statements. Additionally, Dr. Gaylord's opinions extend back to 2007 or 2008, but Mr. McQuaig did not receive care at the Salem VAMC until March of 2012 and Dr. Gaylord gives no explanation as to why he believes plaintiff's mental health manifestations relate back to 2008. Although the medical source statements indicate that Mr. McQuaig experienced memory problems that impeded his ability to work, the clinical notes taken by Lentz do not support a finding of memory problems in 2012 and 2013, the period for which Mr. McQuaig seeks disability. The record also indicates that Mr. McQuaig experienced improvement in his pain with medication and some improvement in depression-related symptoms during the relevant period. Thus, the court concludes that the Law Judge reasonably declined to give controlling weight to Dr. Gaylord's work-related assessments.

However, the court shares plaintiff's frustration with the Law Judge's failure to specify what lesser weight he accorded to Dr. Gaylord's opinions. The resulting uncertainty is particularly troublesome when the Law Judge has given little weight to almost all of the other evidence in the record, including the denial of Mr. McQuaig's previous application for benefits, Mr. McQuaig's disability rating of ninety percent from the Department of Veterans Affairs, and the opinions of the state psychological and medical consultants. (Tr. 22-23). The Law Judge also found the plaintiff's statements concerning the intensity, persistence, and limiting effects of

11

his symptoms to be inconsistent with the medical record. (T.R. 21). The Law Judge appears to elevate his understanding of the clinical findings above all other opinions and statements in the record. However, inasmuch as the court has determined to remand the case for other reasons, plaintiff will be permitted to make arguments regarding the weight accorded to Dr. Gaylord's opinions to a fact finder at the time of a supplemental administrative hearing. Also in light of the court's decision to remand the case to the Commissioner, the court declines to address Mr. McQuaig's remaining claims of error.

In summary, the court concludes that the critical hypothetical questions posed by the Law Judge, excluding plaintiff's limitations in concentration, persistence, and pace, were not consistent with the Law Judge's explicit findings. Accordingly, the court finds "good cause" for remand of this case to the Commissioner for further consideration and development. If the Commissioner is unable to decide the case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing, at which time a comprehensive hypothetical question can be put to a qualified vocational expert. Upon remand, both parties will have the opportunity to present additional evidence and argument. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

DATED: This 28th day of March, 2018.

/s/ Glen Conrad
Senior United States District Judge